USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/31/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
LEI CHEN,

                        Plaintiff,

             -against-

CENNTRO ELECTRIC GROUP LTD, CENNTRO
AUTOMOTIVE CORPORATION, CENNTRO
AUTOMOTIVE GROUP, GREENLAND
TECHNOLOGIES HOLDING CORP.,
GREENLAND ACQUISITION CORPORATION,
ZUGUANG "PETER" WANG, individually,
RAYMOND WANG, individually,

                        Defendants.
-------------------------------------------------------------- X

22-CV-7760 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff claims that Defendants exploited his scientific expertise and reputation as an unofficial employee without adequate compensation in violation of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*[1] Plaintiff asserts that the Court has personal jurisdiction over Defendants and that venue is proper in this District because of a forum-selection clause in an employment contract; the twist in this case is that Plaintiff claims he never agreed to or signed the employment contract. Defendants have moved to dismiss for lack of personal jurisdiction and improper venue under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). *See* Not. of Mot., Dkt. 10. Because the Court lacks personal jurisdiction over Defendants, the motion is GRANTED.

---

[1]     Plaintiff also brings claims for breach of contract, fraud, unjust enrichment, promissory estoppel, fraudulent misrepresentation, defamation, and violations of New York Civil Rights Law § 50. *See generally* Compl., Dkt. 1.

1

## BACKGROUND[2]

Plaintiff Lei Chen is an expert in propulsion and vehicular technologies. Compl., Dkt. 1, ¶¶ 16–18. Cenntro Electric Group Ltd. ("CENN") is an electric vehicle technology company. *Id.* ¶¶ 27, 29.[3] CENN and Peter Wang ("P. Wang") own and operate Cenntro Automotive Group. *Id.* ¶¶ 19, 21, 28. Greenland Technologies Holding Corp. ("GTEC") provides transmission and drivetrain systems for material handling equipment in China. *Id.* ¶¶ 32, 35.[4] Raymond Wang is the CEO of GTEC. *Id.* ¶ 24.

In or around March 2015, CENN hired Plaintiff as an unpaid consultant. *Id.* ¶ 37. P. Wang told Plaintiff that he would be paid only if he developed a working electric vehicle. *Id.* ¶ 38. Plaintiff installed the first drivetrain on a CENN vehicle in 2015 but was not compensated for his work. *Id.* ¶ 40.

Beginning in summer 2016, Plaintiff was employed by CENN pursuant to an employment agreement. *Id.* ¶¶ 42–46. In or around October of 2018, because of the company's financial difficulties, P. Wang required executives at CENN, including Plaintiff, to delay their expected compensation to ensure that low-level factory workers could be paid. *Id.* ¶¶ 47–48.

---

[2]     The Court treats the facts alleged in the Complaint as true for purposes of this motion.

[3]     Cenntro Electric also does business as "Cenntro Automotive Corporation." Compl. ¶ 31.

    Although neither Plaintiff nor Defendants provide sufficient facts about Cenntro Automotive Group to determine whether there is diversity jurisdiction as alleged in the Complaint, the Court nevertheless has federal question jurisdiction because Plaintiff brings a claim under the FLSA. *See Ayres v. Shiver*, No. 21-CV-473 (ERK), 2022 WL 2161178, at *2 (E.D.N.Y. June 15, 2022).

[4]     GTEC was formerly known as Greenland Technologies Holding Corporation. *See* R. Wang Decl., Dkt. 10-3, ¶ 3.

Although P. Wang promised Plaintiff that he would eventually be compensated, Plaintiff has not been paid since March 2019. *Id.* ¶¶ 48–49.

During the summer of 2021, CENN offered Plaintiff a stock option agreement, allegedly to incentivize him to continue working for the company. *Id.* ¶¶ 50–52. The agreement specified that Plaintiff's option would terminate, *inter alia*, in the event of a merger, consolidation, or sale of substantially all of CENN's assets, subject to certain conditions. *Id.* ¶ 55. At the end of 2021, CENN was acquired as part of a transaction CENN described in communications with investors as a "combination" or "merger." *Id.* ¶¶ 56–60.

In early January 2022, Plaintiff contacted CENN to obtain information about his stock options following the merger. *Id.* ¶ 70. CENN's management told Plaintiff that his options had not transferred during the merger because, effective March 2019, he had become an employee of GTEC. *Id.* ¶ 71. When Plaintiff asked GTEC's Chief Financial Officer (the "CFO") about his employment status, the CFO said that the company had no record of Plaintiff working at GTEC. *Id.* ¶¶ 75–77.

Despite the CFO telling Plaintiff that GTEC had no record of his employment, GTEC had previously filed with the Securities and Exchange Commission ("SEC") an employment contract (the "Employment Contract") purportedly between Plaintiff and GTEC. *Id.* ¶ 79; *see also* Employment Contract, Dkt. 15-17.[5] Although the Employment Contract GTEC filed purports to reflect Plaintiff's signature, Plaintiff asserts that the signature was forged; he asserts that he never received nor executed the Employment Contract. *Id.* ¶¶ 80–85. According to Plaintiff, GTEC prepared the fake agreement to increase the company's market value and to mislead inventors ahead of an acquisition. *Id.* ¶¶ 8, 79, 87–88.

---

[5]  The Employment Contract was filed as an exhibit to GTEC's Form 8-K filed on October 30, 2019. *See* Bandovic Decl., Dkt. 15-1, ¶ 6.

The Employment Contract includes the following forum-selection provision (the "Forum-Selection Clause"):

> This Agreement shall be governed by and construed in accordance with the laws of the State of New York and each of the parties irrevocably consents to the jurisdiction and venue of the federal and state courts located in New York.

Employment Contract ¶ 14.

Plaintiff filed this action on September 12, 2022. *See generally* Compl. He alleges that this Court has jurisdiction because Defendants submitted the "fraudulent" Employment Contract, which contains the Forum-Selection Clause, to the SEC. *Id.* ¶ 13. Defendants moved to dismiss for lack of personal jurisdiction and improper venue. *See* Not. of Mot.

## DISCUSSION

### I. The Forum-Selection Clause Does Not Establish Personal Jurisdiction Over Defendants

Plaintiff concedes that the Court does not have personal jurisdiction over Defendants if the Forum-Selection Clause is unenforceable. *See generally* Pl. Mem.; *Felske v. Hitschmann*, No. 10-CV-8899 (RMB), 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them."). Thus, the only question for the Court is whether the Forum-Selection Clause establishes personal jurisdiction over Defendants. Because Plaintiff alleges that his signature on the Employment Contract was forged, there is no valid Forum-Selection Clause. Thus, the Court lacks personal jurisdiction over Defendants.[6]

---

[6] Defendants assert that even if the Forum-Selection Clause were enforceable, only GTEC would be subject to it because the other Defendants are not signatories to the Employment Contract. *See* Defs. Mem., Dkt. 10-1, at 5. Because the Court concludes that the Forum-Selection Clause is unenforceable, it does not address this argument.

### A. Legal Standard

On a Rule 12(b)(2) motion to dismiss, the plaintiff has the burden of demonstrating personal jurisdiction.[7] *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).

To overcome Defendants' challenge to the sufficiency of the allegations in the Complaint regarding personal jurisdiction, Plaintiff needs to have pled facts "which, if true, are sufficient in themselves to establish jurisdiction." *See Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (citing *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564–65 (S.D.N.Y. 1997)). For purposes of this motion, the Court must assume the truth of Plaintiff's well-pleaded factual allegations. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990); *Tamam*, 677 F. Supp. 2d at 725.

A plaintiff may establish personal jurisdiction by alleging that the defendant "agree[d] in advance to submit to the jurisdiction of a given court[.]" *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16 (1964); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (noting that where "forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process") (citations and internal quotation marks omitted); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."); *Indosuez Int'l Fin. B.V. v. Nat'l Reserve Bank*, 98 N.Y.2d 238, 247 (2002) (concluding that a New York forum-selection clause established personal jurisdiction).[8]

---

[7] Because a district court must generally establish that it has subject-matter and personal jurisdiction before considering other grounds for dismissal, *see Mones v. Commercial Bank of Kuwait, S.A.K.*, 204 F. App'x 988, 989 (2d Cir. 2006), and because the Court concludes *infra* that it lacks personal jurisdiction over Defendants, it does not address Defendants' alternative grounds for dismissal based on improper venue.

[8] Courts in this District have applied both New York and federal common law to the question of the enforceability of a forum-selection clause when deciding personal jurisdiction. *See, e.g., NuMSP, LLC v. St.*

5

As a general rule, federal courts will enforce a forum-selection clause, *see Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014), and the mere assertion that a contract was fraudulently induced is insufficient to invalidate the contract's forum-selection clause, *see Stamm v. Barclays Bank*, 960 F. Supp. 724, 729 (S.D.N.Y. 1997) (noting that the forum-selection clause itself must have been induced by fraud to be unenforceable); *Sterling Nat. Bank as Assignee of NorVergence, Inc. v. E. Shipping Worldwide, Inc.*, 826 N.Y.S. 2d 235, 223 (1st Dep't 2006) (same). If, however, the alleged fraud is "so great as to vitiate the entire agreement[,]" then the agreement's forum-selection clause will not be enforced. *Signature Fin. LLC v. Neighbors Glob. Holdings, LLC*, 281 F. Supp. 3d 438, 452 (S.D.N.Y. 2017); *see also DeSola Grp. v. Coors Brewing Co.*, 605 N.Y.S.2d 83, 84 (1st Dep't 1993) (noting that "where a party alleges that a contract is void *ab initio*," the contract's forum-selection clause is also void).

### B. Application

Plaintiff cannot invoke the Forum-Selection Clause to establish personal jurisdiction over Defendants because he alleges that his signature on the Employment Contract was forged and that he never entered into the Employment Contract. *See* Compl. ¶¶ 8–9. A forged signature "renders a contract void *ab initio*." *Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.*, 320 F.3d 362, 370 (2d Cir. 2003) (noting that under both New York law and "general" contract law, if a signature on a contract is forged, "no contract exist[s]") (quoting *Orlosky v. Empire Sec. Sys.*, 657 N.Y.S.2d 840, 842 (3d Dep't 1997)). Accepting Plaintiff's

---

*Etienne*, 462 F. Supp. 3d 330, 342 (S.D.N.Y. 2020) (applying federal common law); *Signature Fin. LLC v. Neighbors Glob. Holdings, LLC*, 281 F. Supp. 3d 438, 445 (S.D.N.Y. 2017) (applying New York law). Defendants argued a mix of both, *see* Defs. Mem. at 4–5; Plaintiff argued federal law, *see* Pl. Mem., Dkt. 15, at 16; and neither side briefed the issue. Because choice of law is not outcome-determinative, and because the Second Circuit (without expressly deciding this issue) has applied federal common law in this context, *see D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103–05 (2d Cir. 2006), the Court primarily applies federal law.

allegations as true, there has never been a contract the forum-selection clause of which could be enforced. *See Signature Fin. LLC*, 281 F. Supp. 3d at 446; *DeSola Grp.*, 605 N.Y.S.2d at 84.

Urging the Court to hold otherwise, Plaintiff makes the astounding argument that the Complaint's "legal conclusions couched as factual allegations" need not be credited, and that the Complaint fails adequately to plead fraud. Pl. Mem. at 11–13. Putting aside the fact that this argument undermines Plaintiff's own claims, Plaintiff is incorrect. Whether Plaintiff signed the Employment Contract or his signature was forged is a question of fact, not of law; allegations that the signature was forged must, therefore, be deemed true for the purposes of this motion. *See Parker v. Zugibe*, No. 16-CV-4265 (KMK), 2017 WL 4296795, at *6 (S.D.N.Y. Sept. 26, 2017) (accepting as true, for the purposes of a motion to dismiss, that a signature had been forged); *Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*, 117 F. Supp. 2d 394, 402 (S.D.N.Y. 2000) (holding that a genuine dispute of material fact existed as to the validity of a signature because the parties disputed whether it was forged).

Although a plaintiff seeking to *invalidate* a forum-selection clause based on fraud must meet a heightened pleading standard, *see Jalee Consulting Grp., Inc. v. XenoOne, Inc.*, 908 F. Supp. 2d 387, 394 (S.D.N.Y. 2012), that requirement has no bearing in this case because Plaintiff seeks to *enforce* a forum-selection clause in an agreement that he alleges was void from its inception. Plaintiff cannot have it both ways.[9] *Cf. Paysys Intern. v. Atos SE*, No. 14-CV-10105 (SAS), 2015 WL 4533141, at *2–3 (S.D.N.Y. July 24, 2015) (casting doubt on the exercise of personal jurisdiction over defendants based on a forum-selection clause in an agreement the

---

[9] Plaintiff asserts that *Defendants* are trying to have it both ways because they do not challenge the extent to which the Forum-Selection Clause (1) was communicated to Defendants; (2) has mandatory force; and (3) covers the claims and parties involved. *See* Pl. Mem. at 16–17. But because, according to Plaintiff, the Employment Contract was void from its inception, there was no reason for Defendants to address these other factors. Unlike Plaintiff, Defendants do not have the burden of establishing claims in this action; they have discretion to make selective arguments. Plaintiff, by contrast, must reconcile his position in opposing the motion to dismiss with the allegations in his Complaint.

plaintiff alleged was void because a final ruling in the plaintiff's favor would "strip[] [the] Court of its authority to entertain the contract issue in the first place"); *Jalin Realty Capital Advisors, LLC v. A Better Wireless, NISP, LLC*, No. 11-0165 (JRT) (LIB), 2012 WL 838439, at *4 n.2 (D. Minn. Mar. 12, 2012) (treating a forum-selection clause as invalid for the purposes of a motion to transfer venue because the non-movant alleged facts that, "if proven, may [have been] sufficient to vitiate" the agreement at issue).

Disregarding the Forum-Selection Clause in this case is consistent with the "strong federal public policy" that generally favors a forum-selection clause's enforcement. *Martinez*, 740 F.3d 211 at 218–19 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516 (1974)). That policy is grounded in the "orderliness and predictability" that results from Courts respecting parties' agreements regarding venue. *Id.* No such interest lies here because, according to Plaintiff, he never agreed to litigate in New York.

In short, there is no binding forum-selection clause, and this Court lacks personal jurisdiction over Defendants.

**II.      Defendants Are Not Equitably Estopped From Contesting Personal Jurisdiction**

Plaintiff argues that Defendants are equitably estopped from contesting personal jurisdiction based on the Forum-Selection Clause because Defendants submitted the Employment Contract to the SEC and certified that it was a valid agreement.

The doctrine of equitable estoppel is reserved for "rare and exceptional circumstances" pursuant to which a party is "prevented in some extraordinary way from exercising his rights." *NEM Re Receivable, LLC v. Fortress Re, Inc.*, 187 F. Supp. 3d 390, 398 (S.D.N.Y. 2016) (cleaned up). To benefit from equitable estoppel under New York law,[10] the plaintiff must

---

[10]     The Court applies New York law because there is no conflict between federal and New York law, and the parties both apply New York law. *See Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 59

demonstrate: (1) conduct by the defendant which amounts to a false representation or concealment of material facts; (2) the defendant intended the false representation would be acted upon by the plaintiff; and (3) the defendant knew the real facts. *In re Vebeliunas*, 332 F.3d 85, 93–94 (2d Cir. 2003). With respect to himself, a plaintiff must show: "(1) lack of knowledge and of the means of knowledge of the true facts; (2) reliance upon the conduct of the [defendant]; and (3) prejudicial changes in [his] position[]." *Id.* at 94. Any reliance on a false representation or concealment of material fact must have been reasonable and foreseeable. *See City of Yonkers v. Otis Elevator Co.*, 649 F. Supp. 716, 735 (S.D.N.Y. 1986) (citing *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 264 (2d Cir. 1984)).

Plaintiff asserts that Defendants engaged in misconduct that justifies estopping them from contesting personal jurisdiction because they "misled" Plaintiff about "his employment status." Pl. Mem. at 8. Defendants' deception *toward Plaintiff* as detailed in the Complaint has nothing to do with the Employment Contract that contains the Forum-Selection Clause. Although Defendants allegedly deceived Plaintiff into thinking that he was employed by Defendants at various points, it was part of that scheme that Defendants did not present Plaintiff with the Employment Contract. In Plaintiff's own words, Defendants filed the Employment Contract with the SEC "to induce investors to invest in them[,]" Compl. ¶ 8, not to mislead Plaintiff. If anything, Plaintiff's allegations suggest that Defendants tried to hide the existence of the Employment Contract from Plaintiff because they sought to avoid giving him the employee benefits set forth in it. *See id.* ¶¶ 82–85.

---

(1984) (setting forth the principles of estoppel as a matter of federal law); *Kulig v. Midland Funding, LLC*, No. 13-CV-4715 (PKC), 2013 WL 6017444, at *3–4 (S.D.N.Y. Nov. 13, 2013) (concluding that New York law governed choice of law in a federal question case because no "significant federal policy" required the application of federal common law, and stating that under New York law a choice-of-law analysis is only necessary if there is an "actual conflict of laws"); *Wolfson v. Bruno*, 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011) (noting that where the parties' briefs "assume that New York law controls," such "implied consent" is sufficient to establish choice of law) (internal quotation marks and citation omitted).

Fraudulent conduct that was not "aimed" at Plaintiff cannot form the basis of an estoppel claim. *Petito v. Pffath*, 85 N.Y.2d 1, 7 (1994) (concluding that equitable estoppel had "no application" because the "fraudulent" conduct at issue "was not aimed at the plaintiff"); *see also Novartis Pharma AG v. Regeneron Pharm., Inc.*, 582 F. Supp. 3d 26, 43–45 (N.D.N.Y. 2022) (noting that "equitable estoppel is not a general remedy to punish secretive wrongdoing" and concluding that defendants' purported effort to deceive the Patent and Trademark Office "was not tailored to prevent [the plaintiff] from bringing a suit" and could, therefore, not form the basis of an equitable estoppel claim); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 445 (S.D.N.Y. 2014) (noting that equitable estoppel is only appropriate if the misconduct is aimed "toward the potential plaintiff, not a community at large") (quoting *Doe v. Kolko*, No. 06-CV-2096, 2008 WL 4146199 (SLT), at *4 (E.D.N.Y. Sept. 5, 2008)).

Nor would it have been reasonable for Plaintiff to rely on a contract he knew was fake when deciding in which district court to file this lawsuit. *Cf. Austin v. Fordham Univ.*, No. 21-CV-6421 (JPO), 2022 WL 4626485, at *7 (S.D.N.Y. Sept. 30, 2022) (concluding that a plaintiff did not establish reasonable reliance as part of an equitable estoppel claim given that the defendant's suspect conduct "should have put [the] [p]laintiff on notice" to investigate further); *Indemnity Ins. Co. of N. Am. v. K-Line Am., Inc.*, No. 06-CV-0615 (BSJ), 2008 WL 4922327, at *9 (S.D.N.Y. Feb. 27, 2008) (dismissing plaintiffs' claim that they were "induced" to bring an action in New York and that defendants were therefore equitably estopped from invoking a forum-selection clause because even assuming plaintiffs' unpled assertions, they were not justified in believing defendants would not invoke the clause); *Sanitoy, Inc. v. Shapiro*, 705 F. Supp. 152, 157 (S.D.N.Y. 1989) (concluding that plaintiffs could not have reasonably relied on a

defendant's misrepresentations as truthful to establish a fraud claim because they had "already discovered that they could not believe [the] defendant's representations").

For all of those reasons, Plaintiff's equitable estoppel argument fails.[11]

## CONCLUSION

For the foregoing reasons, Plaintiff's case is DISMISSED for lack of personal jurisdiction.

The Clerk of Court is respectfully directed to close the open motion at Docket Entry 10 and to close the case.

**SO ORDERED.**

**Date: March 31, 2023**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

[11] Nevertheless, it is worth noting that Defendants' tactics reek of gamesmanship. If, as they told the SEC, the Employment Contract is valid, then they should have stood by their contract, not moved to dismiss for lack of personal jurisdiction (despite Plaintiff's claim that the contract was forged), and litigated with Plaintiff on the merits in the forum to which they agreed. On the other hand, if Plaintiff is factually correct and Defendants forged his signature, Defendants have some nerve trying to benefit from the fraud vis-à-vis the SEC and investors but then using their own fraudulent conduct as a shield to protect themselves from accountability in this forum.

11